**IRA RESOURCES, INC.,
et, al., Appellants,**

v.

**Enrique Juan GRIEGO and Sonya
Griego, Appellees.**

No. 13–04–101–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

March 31, 2005.

Rehearing Overruled May 5, 2005.

Charles C. Murray, Lisa Powell, Atlas & Hall, L.L.P., McAllen, Sparber Rudolph Annen, Richard J. Annen, Todd R. Gabriel, San Diego, CA, for appellants.

James H. Miller, Houston, Roberto J. Yzaguirre, Jose E. Chapa, Jr., Yzaguirre & Chapa, Manuel Guerra, III, McAllen, for appellees.

Before Chief Justice VALDEZ and Justices CASTILLO and GARZA.

## OPINION

Opinion by Justice GARZA.

In this interlocutory appeal, IRA Resources, Inc., Eldorado Bank, and California Bank and Trust (as successor in interest to Eldorado Bank) challenge the trial court's denial of their special appearances. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Supp. Vernon 2004–05). Because we conclude that the trial court has specific jurisdiction over IRA Resources but no jurisdiction over Eldorado Bank or California Resources, the trial court's ruling is affirmed in part and reversed and rendered in part.

## I. Background

This case arises from the alleged sale of an unregistered security. In April 2001, Abraham Martinez approached Enrique and Sonya Griego about an investment earning a guaranteed annual return of 14%.[1] The investment would work as follows. Martinez, acting on behalf of SPA Marketing, LLC ("SPA"), would sell the Griegos a number of "Customer Owned Coin Operated Telephones" owned by American Telecommunications Company, Inc. ("ATC").[2] The Griegos would then enter a service contract with Alpha Tel-Com, Inc. ("Alpha"), ATC's parent corporation, under which Alpha would "perform virtually all services required to maintain the pay telephones in good working order." In exchange, Alpha would receive 70% of the adjusted gross revenue generated by the telephones and ATC would disburse the balance of the revenue to the Griegos. In the event the Griegos became dissatisfied with the arrangement, ATC would buy back the telephones according to a fixed price schedule.[3]

The Griegos were interested in the investment and agreed that Enrique Griego would purchase five telephones for $5,000 apiece, but they wanted to use qualified retirement funds for the purchase. Martinez advised the Griegos that in order to hold the telephones in an individual retirement account ("IRA"), they would need to roll the IRA into a self-directed IRA administered by IRA Resources, Inc. and Eldorado Bank, California corporations with their primary places of business in San Diego County, California. According to the Griegos, Martinez claimed that as an agent of IRA Resources and Eldorado Bank, he was authorized to open accounts for them with the companies. He provided the Griegos with forms to execute the rollover. He also provided them with an investment directive to purchase five telephones from ATC and an indemnity agreement in favor of IRA Resources and Eldo-

---

1. All three individuals are Texas residents.

2. The record does not indicate where the telephones are located.

3. The development of a similar investment and the interrelationship between SPA, Alpha, and ATC is described in *SEC v. Rubera,* 350 F.3d 1084, 1087–89 (9th Cir.2003).

rado Bank. Enrique Griego completed the forms provided by Martinez and tendered a check for $25,500 payable to IRA Resources c/o Eldorado Bank and a money order for $50 payable to IRA Resources. Everything was then forwarded to IRA Resources.

After receiving the application, IRA Resources retained the $50 money order as an account initiation fee and opened a self-directed IRA for Enrique Griego. Griego's check for $25,500 was deposited with Eldorado Bank in a general account for the benefit of self-directed IRA holders. Pursuant to Griego's investment directive, IRA Resources issued a check in the amount of $25,000 payable to ATC for the purchase of five telephones. Title to the telephones was granted to "Eldorado Bank Trust FBO Enrique Griego, SEP # 153731SE." The $500 difference between the $25,500 check issued by Enrique Griego to IRA Resources and the $25,000 check issued by IRA Resources to ATC remained deposited in the general account with Eldorado Bank.

As the administrator of Griego's self-directed IRA, IRA Resources promised to provide certain record-keeping services. For instance, it promised to issue quarterly statements regarding the performance of the investments held in Griego's self-directed IRA and was obligated to report the IRA's income to the Internal Revenue Service.

Sometime in June 2001, ATC ceased making payments to the owners of telephones subject to service agreements with Alpha. Subsequently, IRA Resources informed ATC that it would not process any more account applications directing investments in ATC until ATC met its obligations to IRA Resources' existing clients.

In September 2003, Enrique and Sonya Griego filed a second amended original petition in the 332nd District Court of Hidalgo County, naming IRA Resources, Eldorado Bank, and California Bank & Trust (as successor in interest to Eldorado Bank) as defendants. The petition alleged that the sale and service agreements between Griego, ATC, and Alpha constituted the illegal sale of an unregistered security in violation of the Texas Securities Act. *See* TEX.REV.CIV. STAT. ANN. art. 581–4 (Vernon Supp.2004–05) (defining "security"). The petition further alleged that the defendants violated article 581–33 of the securities act through their participation in the illegal sale by providing financial services that were necessary for the transaction and by aiding and abetting ATC and Alpha in a scheme to defraud investors by allowing their names, reputations, and stability to be used to promote the sale of the unregistered security. *See* TEX.REV.CIV. STAT. ANN. art. 581–33 (Vernon Supp.2004–05).

The defendants responded by filing special appearances, claiming that they would be denied due process if required to submit to the trial court's jurisdiction. The trial court denied the special appearances, and this appeal ensued.

## II. Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002). In resolving this question of law, a trial court must frequently resolve questions of fact. *Id.* at 806. On appeal, the trial court's ruling on a special appearance is subject to de novo review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Id.* When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Id.* A trial court's resolution of disputed

factual issues can be challenged on both factual and legal sufficiency grounds. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002).

## III. Personal Jurisdiction over Nonresident Defendants

■ The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *Am. Type Culture*, 83 S.W.3d at 807 (citing *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965)). But upon filing a special appearance, the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff. *Id.* (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985) (per curiam)).

### A. IRA Resources

#### 1. Texas Long–Arm Statute

■ We begin with the Texas long-arm statute, which must confer jurisdiction over IRA Resources in order for jurisdiction to be proper. *See Marchand*, 83 S.W.3d at 795 ("The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants."). The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas and lists some activities that constitute "doing business." *Id.* (citing TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997)). A nonresident does business in Texas, for instance, if it "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1). The parties do not dispute that IRA Resources contracted with Enrique Griego by mail. Griego performed his part of the contract in Texas by mailing his payment for IRA

Resources' services from Texas. We therefore conclude that IRA Resources did business in Texas and that Texas courts have jurisdiction over IRA resources under the long-arm statute.

#### 2. Minimum Contacts

■ Next, we must determine whether the exercise of jurisdiction over IRA Resources is constitutional under the Due Process Clause of the Fourteenth Amendment. *See Am. Type Culture*, 83 S.W.3d at 806. The first component of this inquiry is the nonresident's contacts with the forum state. *See Marchand*, 83 S.W.3d at 795. Our objective is to protect the nonresident from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Am. Type Culture*, 83 S.W.3d at 806 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)). The nonresident must have the "minimum contacts" necessary to give rise to either specific or general jurisdiction. *See Marchand*, 83 S.W.3d at 795–96 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal Exch. Assurance., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Although the Griegos maintain that the contacts in this case are sufficient to create both specific and general jurisdiction, their allegations are more consistent with specific jurisdiction. We therefore begin with specific jurisdiction.

■ When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. Specific jurisdiction over a nonresident defendant exists if (1) the defendant's contacts with the forum are purposeful and (2) the cause of action arises from or relates to those contacts. *Am. Type Culture*, 83 S.W.3d at

**254**

806 (citing *Guardian Royal,* 815 S.W.2d at 227).

According to the Griegos, IRA Resources had direct and purposeful contacts with Texas through Martinez, its agent, who sold the services of IRA Resources to them in Texas. IRA Resources accepted and processed the account application and other paperwork given to Enrique Griego by Martinez in Texas and completed by Griego in Texas. It also accepted Enrique Griego's account initiation fee of $50, which was mailed from Texas. IRA Resources promised to perform record-keeping services for Griego's self-directed IRA and subsequently sent him periodic statements of account activities. IRA Resources also provided similar services for at least twenty-four other Texas residents who invested in ATC through self-directed IRAs that it administers.

The Griegos further contend that their cause of action against IRA Resources arises from and relates to the company's contacts with Texas. They allege that IRA Resources participated in and aided and abetted the sale of an unregistered security by, among other things, providing services that were necessary for the transaction. The Griegos claim they could not have purchased the telephones with qualified retirement funds without a self-directed IRA account administered by a third party. IRA Resources provided this service and purchased the telephones on behalf of Enrique Griegos. The cause of action now asserted by the Griegos arises from and relates to the contacts flowing from these services.

In response, IRA Resources maintains that the Griegos have failed to produce "any evidence" that Martinez was its agent. It argues that Martinez's actions should therefore not be considered as a basis for exercising jurisdiction. *See Am. Type Culture,* 83 S.W.3d at 806 ("a defen-

dant [cannot] be haled into a Texas court for the unilateral acts of a third party"). According to IRA Resources, the facts alleged by the Griegos are insufficient to create specific jurisdiction.

Because the parties dispute whether Martinez was an agent of IRA Resources, an issue which will affect our minimum contacts analysis, we turn to the applicable agency principles to resolve the issue.

■■■ Agency will not be presumed. *Happy Indus. Corp. v. Am. Specialties, Inc.,* 983 S.W.2d 844, 852 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). Apparent agency, the theory advanced by the Griegos, exists where the principal's conduct would lead a reasonably prudent person to believe that the agent possessed the authority to act on behalf of the principal. *See NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 953 (Tex.1996) (per curiam); *Maccabees Mut. Life Ins. Co. v. McNiel,* 836 S.W.2d 229, 232–33 (Tex.App.-Dallas 1992, no writ). To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority. *Dilling,* 922 S.W.2d at 952–53 (citing *Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex.1984)). A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority. *Id.* at 953 (citing *Southwest Title Ins. Co. v. Northland Bldg. Corp.,* 552 S.W.2d 425, 428 (Tex. 1977)).

■■■ As it relates to the issue of agency, we construe IRA Resources' challenge to be a "no-evidence" or legal sufficiency challenge. When reviewing a legal-sufficiency point, we consider only the evidence and inferences that tend to support a find-

ing and disregard all evidence and inferences to the contrary. *N. Am. Refractory Co. v. Easter,* 988 S.W.2d 904, 908 (Tex. App.-Corpus Christi 1999, pet. denied). If there is any evidence of probative force to support the finding (i.e., more than a scintilla), we will overrule the issue. *Id.*

 The Griegos have not produced legally sufficient evidence to establish that Martinez was acting as an apparent agent for IRA Resources when he offered the services of IRA Resources to the Griegos. There is no evidence that IRA Resources was aware or had reason to be aware of Martinez's actions. Furthermore, the Griegos have failed to identify any conduct on the part of IRA Resources that would lead a reasonably prudent person to conclude that Martinez had authority to act on behalf of IRA Resources. In fact, the only conduct by IRA Resources that is part of the Griegos' theory of agency is the company's acceptance of Enrique Griego's account application; however, this conduct does not tend to show that IRA Resources was aware of Martinez's involvement in the transaction or that IRA Resources approved of such involvement. There is no evidence that Martinez completed the forms for Enrique Griego, that he mailed the forms to IRA Resources for Griego, or that the forms included any indication of Martinez's involvement. For the limited purpose of reviewing the trial court's ruling on IRA Resources' special appearance, we conclude that Martinez was not an agent for IRA Resources. A finding of jurisdiction cannot be based on his actions. *See Am. Type Culture,* 83 S.W.3d at 806.

 Having concluded that Martinez was not an apparent agent of IRA Resources, we must decide whether the remaining, undisputed contacts are sufficient to confer specific jurisdiction. We conclude that they are. IRA Resources' contacts were purposeful, *see Am. Type Cul-*

*ture,* 83 S.W.3d at 806; they increased the company's revenues and profits by generating increased fees from a Texas resident. IRA Resources knew its fees were coming from Texas because the application filed by Griego listed his address in Texas. With full knowledge that it was contracting with a Texas resident, IRA Resources agreed to act as the administrator of Griego's self-directed IRA, accepted his account initiation fee, created an account for him, and purchased telephones from ATC on his behalf. The cause of action asserted against IRA Resources arises from and relates to these contacts. *See id.* The Griegos allege that IRA Resources participated in and aided and abetted the sale of an illegal security by, among other things, selling services that were necessary to accomplish the transaction. Accordingly, we conclude that IRA Resources purposefully availed itself of the privilege of conducting business in Texas and could have reasonably anticipated being haled into a Texas court. *See Gen. Elec. Co. v. Brown & Ross Int'l Distribs., Inc.,* 804 S.W.2d 527, 531 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (holding that nonresident defendant who "expected to profit from its activities ... [in Texas] and ... received a benefit from Texas residents ... could reasonably have assumed that a Texas court might call").

### 3. Fair Play and Substantial Justice

 In addition to minimum contacts, due process requires that the maintenance of the suit not offend "traditional notions of fair play and substantial justice," *Am. Type Culture,* 83 S.W.3d at 806 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); however, only in rare cases will the exercise of jurisdiction not meet this test when the nonresident defendant has purposefully established minimum contacts with the

forum state, *Guardian Royal,* 815 S.W.2d at 231. This is not one of those cases.

■ The Griegos have alleged that the exercise of jurisdiction over IRA Resources will not offend traditional notions of fair play and substantial justice for five reasons: (1) IRA Resources will not be substantially burdened; (2) Texas has a strong interest in protecting its residents who purchase securities; (3) Texas is a convenient forum; (4) a Texas court can efficiently resolve the controversy and promote the policies implicated by the Texas Securities Act; and (5) Texas has an interest in providing an effective means of redress for its residents. *See id.* (listing five factors that should be considered, as appropriate, in determining whether the maintenance of a suit offends traditional notions of fair play and substantial justice).

Although "it is incumbent upon the defendant to present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable,'" IRA Resources has presented no such arguments. *See id.* Consequently, it has failed to negate jurisdiction on this basis. *See Am. Type Culture,* 83 S.W.3d at 807 ("upon filing a special appearance, the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff"). We conclude that the trial court did not err in denying the special appearance filed by IRA Resources.

### B. Eldorado Bank

#### 1. Texas Long–Arm Statute

The Griegos contend that jurisdiction over Eldorado Bank is proper under the Texas long-arm statute because Eldorado Bank engaged in business in Texas by acting as an account custodian for the self-directed IRA accounts administered by IRA Resources. *See Marchand,* 83

S.W.3d at 795. Because the requirements of the Texas long-arm statute are met only if the concerns of due process are satisfied, we proceed directly to the minimum contacts analysis without passing on the issue of whether the allegations against Eldorado Bank amount to conducting business in Texas under the long-arm statute. *See Guardian Royal,* 815 S.W.2d at 226.

#### 2. Minimum Contacts

■ The Griegos allege that Eldorado Bank's contacts with Texas are sufficient to create both specific and general jurisdiction. We disagree.

We begin with specific jurisdiction. Where, as here, there are multiple defendants, we must test each defendant's actions and contacts with the forum separately. *Shapolsky v. Brewton,* 56 S.W.3d 120, 132 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Contrary to the spirit of this directive, the Griegos have lumped Eldorado Bank's contacts together with those of IRA Resources. For instance, the Griegos allege that both Eldorado Bank and IRA Resources accepted payment for fees charged to Enrique Griego, sent periodic statements to Griego, and promised to prepare tax documents showing activity in his account. In addition, the Griegos contend that Martinez was an apparent agent of both IRA Resources and Eldorado Bank.

■ We address this last contention first. For reasons similar to those stated above regarding IRA Resources, we conclude that there is legally insufficient evidence to prove that Martinez was an apparent agent of Eldorado Bank. The Griegos simply have not produced any evidence upon which a reasonably prudent person could conclude that Martinez had authority to act for Eldorado Bank. The only conduct by Eldorado Bank that is identified in the Griegos' theory of agen-

cy is the opening of an account for IRA Resources; however, this conduct in no way indicates that Eldorado Bank approved of or authorized Martinez's actions in soliciting business from the Griegos. *See Dilling*, 922 S.W.2d at 953 ("A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority."). In fact, there is no evidence whatsoever that Eldorado Bank was even aware of Martinez's actions. Accordingly, we will not impute Martinez's actions to Eldorado Bank for the purpose of determining jurisdiction.

■ The remaining contacts alleged by the Griegos are unsubstantiated by the record. There is no evidence that Eldorado Bank ever collected a fee from the Griegos, sent statements to the Griegos, or promised to file tax documents on their behalf. To the contrary, the evidence shows that Eldorado Bank never had any contact with the Griegos but instead dealt directly and exclusively with IRA Resources. In fact, the record shows that Enrique Griego has never had an account with Eldorado Bank. Rather, IRA Resources has a general account with Eldorado Bank in which the funds of self-directed IRA holders, including those of Enrique Griego, are intermingled. Although it might be reasonable to infer that Eldorado Bank profited by Griego's relationship with IRA Resources, such random, fortuitous, and attenuated contact with Texas is insufficient for specific jurisdiction. We conclude that Eldorado Bank's contacts with Texas were not purposeful and that the exercise of specific jurisdiction would violate the Due Process Clause of the Fourteenth Amendment.

■ Next, we turn to the requirements for general jurisdiction. General jurisdiction allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Am. Type Culture*, 83 S.W.3d at 806–07 (citing *Guardian Royal*, 815 S.W.2d at 228). General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. *Id.* (citing *Guardian Royal*, 815 S.W.2d at 228).

The Griegos have failed to establish the continuous and systematic contacts necessary for general jurisdiction. The only evidence submitted by the Griegos to prove general jurisdiction is a report from the website of the Texas Secretary of State indicating that Eldorado Bank has filed five UCC financing statements in Texas, reflecting its status as a "secured party." From this evidence, the Griegos ask that we infer Eldorado Bank has continuously and systematically conducted banking business in Texas by loaning money to Texas businesses and securing those loans by filing mortgages and financing statements in Texas. We will not do so.

Although the parties have cited no cases from Texas courts on the issue of whether the filing of financing statements constitutes continuous and systematic contacts, courts from other jurisdictions have resoundingly rejected any such possibility. In *Soma Med. Int'l v. Standard Chtd. Bank*, for instance, the Tenth Circuit held that under Utah law, the filing of financing statements and the recording of other instruments was not the kind of substantial and continuous activity necessary to subject a nonresident defendant to general jurisdiction. *Soma Med. Int'l v. Standard Chtd. Bank*, 196 F.3d 1292, 1296 (10th Cir.1999). Other courts have reached similar conclusions. *See Neb. Beef, Ltd. v. KBK Fin., Inc.*, 288 F.Supp.2d 985, 988–89 (S.D.Iowa 2003) (holding that nonresi-

dent's filing of a financing statement in forum state, transfer of $71 million into forum state, and purchase of $71 million of accounts receivable from company located in forum state were not continuous and systematic contacts); *Occidental Fire & Cas. Co. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,* 689 F.Supp. 564, 567 (E.D.N.C.1988) (holding that filing of financing statements in North Carolina does not create the minimum contacts necessary for general jurisdiction); *Goehring v. Superior Court,* 62 Cal.App.4th 894, 73 Cal.Rptr.2d 105, 111–15 (1998) (holding that filing a financing statement in forum state is insufficient for minimum contacts); *NFD, Inc. v. Stratford Leasing Co.,* 433 N.W.2d 905, 909 (Minn.Ct.App.1988) (holding that no minimum contacts exist based on filing of financing statement); *Ensign v. Bank of Baker,* 676 N.W.2d 786, 791 (N.D.2004) (holding that making loans to North Dakota residents and filing financing statements with the North Dakota Secretary of State are not minimum contacts necessary for general jurisdiction).

Having concluded that Eldorado Bank lacks the minimum contacts necessary for either specific or general jurisdiction, we need not decide whether the maintenance of a suit against Eldorado Bank in Texas would offend the traditional notions of fair play and substantial justice. The trial court erred by denying Eldorado Bank's special appearance.

### C. California Bank

For the reasons stated above regarding Eldorado Bank, we also conclude that the trial court erred by denying California Bank's special appearance, as its liability derives entirely from Eldorado Bank through a successor-in-interest theory. There is no specific jurisdiction over Eldorado Bank and therefore no specific jurisdiction over California Bank. Likewise, the

allegations made by the Griegos to establish general jurisdiction over California Bank (namely, the filing of financing statements in Texas) fail for the same reasons as the allegations against Eldorado Bank.

### IV. Conclusion

The trial court's order denying the special appearances of IRA Resources, Eldorado Bank, and California Bank is affirmed with respect to IRA Resources and reversed and rendered with respect to Eldorado Bank and California Bank.