Affirmed and Opinion filed September 13, 2005









Affirmed and Opinion filed
September 13, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00552-CV

_______________

 

JAMES I. MEADER, INDIVIDUALLY AND ON BEHALF OF ALL
PERSONS SIMILARLY SITUATED IN THE STATE OF TEXAS, Appellants

 

V.

 

IRA RESOURCES, INC., CALIFORNIA
BANK & TRUST AS SUCCESSOR IN INTEREST TO ELDORADO BANK, AND ELDORADO BANK,
Appellees

__________________________________________________________________

 

On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 03‑37705

__________________________________________________________________

 

O
P I N I O N








This
appeal arises from the trial court=s order granting a special appearance
motion filed by IRA Resources, Inc., California Bank & Trust as Successor
in Interest to Eldorado Bank and Eldorado Bank (AEldorado@) (collectively, Aappellees@). 
In one issue, appellant James I. Meader challenges the trial court=s order, claiming appellees have
sufficient minimum contacts with Texas to support an assertion of personal
jurisdiction.  We conclude that the
record evidence does not establish the requisite minimum contacts with this
forum, and therefore affirm the trial court=s order.

I.  Factual and
Procedural Background

Meader,
a Texas resident, purchased three water treatment units sold by AquaDyn
Technologies, Inc. (AAquaDyn@),[1]
for a total cost of $48,000, to be held as an investment.  He purchased the units through Mike Scott,
who was at the time employed by Sentinel, a company located in Texas.  Scott advised Meader that the AquaDyn units
would provide a Aguaranteed@ fifteen percent return on Meader=s investment.  To facilitate the purchase, Meader opened a
Self-Directed Individual Retirement Account (ASDIRA@) administered by IRA Resources on
behalf of Eldorado, custodian of the SDIRA. 
Scott provided Meader with the forms necessary to effectuate a transfer
of funds from Meader=s existing individual retirement account into the SDIRA.[2]  The contribution check from Meader=s existing retirement account, for
$48,375, was made payable to Eldorado Bank for the benefit of Meader.  As administrator of the SDIRA, IRA Resources
forwarded $48,000 to AquaDyn to purchase the water treatment units on Meader=s behalf.








Meader
claimed the AquaDyn units were securities requiring registration with the Texas
State Securities Board and sued appellees under the Texas Securities Act,[3]
individually and on behalf of all Texas residents purchasing the AquaDyn units
through SDIRAs.[4]  Meader alleged the appellees furthered
AquaDyn=s scheme to defraud investors by
acting as custodian of the SDIRAs, and that the appellees failed to properly
investigate the legitimacy of AquaDyn=s water treatment units as an
investment.  Meader also asserted
statutory and common-law fraud causes of action, and negligence claims.  The appellees filed a special appearance
motion, which the trial court granted, and this appeal ensued.  

II.  Standard
of Review 

Whether
a court has personal jurisdiction over a defendant is a question of law.  Am. Type Culture Collection, Inc.
v. Coleman, 83 S.W.3d 801, 805B06 (Tex. 2002).  The trial court=s decision to grant or deny a special
appearance is subject to de novo review on appeal, but if a factual dispute
exists, an appellate court is called upon to review the trial court=s resolution of the factual dispute
as well.  Id. at 806; BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  If the trial court does not issue findings of
fact, as in this case, a reviewing court should presume the trial court
resolved all factual disputes in favor of its judgment.  Am. Type Culture, 83 S.W.3d at 806.

A
plaintiff has the initial burden of pleading allegations sufficient to bring a
nonresident defendant within the provisions of the Texas long‑arm
statute.  Id. at 807.  When the nonresident defendant files a
special appearance motion, he assumes the burden of negating the jurisdictional
bases asserted by the plaintiff.  Id.;
see Tex. R. Civ. P. 120a. 

III.  Discussion

On appeal, Meader argues the trial court erred in granting
the special appearance motion because (1) IRA Resources and Eldorado conducted
business in this State, the lawsuit arose out of that business, and therefore,
the court has specific jurisdiction; and (2) appellees contracted with other
Texas residents and contracted with a Dallas company to perform accounting
services, the court has general jurisdiction. 


A.        Personal
Jurisdiction Over Nonresident Defendants








An assertion of personal jurisdiction over nonresident
defendants must comport with state statutory and federal constitutional
requirements.  Am. Type Culture,
83 S.W.3d at 806.  The Texas long-arm
statute authorizes the exercise of jurisdiction over a nonresident defendant Adoing business@ in Texas, and allows Texas courts to
exercise personal jurisdiction Aas far as the federal constitutional requirements of due
process will allow.@  Id.; see Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997).[5]  

Personal jurisdiction over nonresident defendants satisfies
the constitutional requirements of due process when the defendant has
purposefully established minimum contacts with the forum state, and the
exercise of jurisdiction is consistent with traditional notions of fair play
and substantial justice.[6]  Marchand, 83 S.W.3d at 795 (citing Int=l Shoe Co. v. Washington, 326 U.S. 310, 316, (1945)).  Foreseeability is a factor in the minimum
contacts analysis, but it alone will not support personal jurisdiction.  CSR Ltd. v. Link, 925 S.W.2d 591, 595
(Tex. 1996).  A defendant=s minimum contacts may give rise to
either specific jurisdiction or general jurisdiction.  Am. Type Culture, 83 S.W.3d at
806.   








In his pleadings, Meader stated the trial court had
jurisdiction over appellees because all or a substantial part of the events or
omissions giving rise to his claims occurred in Texas, the transaction giving
rise to the cause of action occurred in Texas, the appellees Ahad agents@ in Texas, and Meader is a Texas
resident.  Further, Meader alleged his
suit arose as follows: 

This case arises out of Defendants= actually participated [sic] in and provided
assistance to a scheme to defraud innocent investors out of their retirement
dollars.  In its role as a custodian of
IRAs and/or custodian for self-directed IRAs for [AquaDyn] customers,
Defendants actually participated in the sale of unregistered securities and
rendered substantial assistance by providing investment mechanisms that allowed
AquaDyn customers to invest their IRA funds into AquaDyn [sic] securities.

* * * *

AquaDyn approached IRA Resources and Eldorado and
requested and received approval to sell their IRA custodian services along with
the water treatment systems in order to facilitate sales to persons that had
funds in retirement accounts to invest. 
IRA Resources and Eldorado conspired with AquaDyn to provide qualified
IRAs and self-directed IRA custodial accounts to allow to [sic] investors . . .
to invest in AquaDyn without paying such penalties. 

Based on these allegations, Meader asserted the following causes of
action: (1) violations of Article 581-33 of the Texas Securities Act; (2) AStatutory Stock Fraud;@ (3) common law fraud; (4) negligent
misrepresentation; and (5) negligence.

In his brief, Meader argues the record evidence establishes
the following contacts in support of specific jurisdiction: (1) Scott was the
agent for IRA Resources and AquaDyn; (2) Scott sold the water treatment
units to Meader in Texas; (3) in conjunction with the sale, Scott sold
appellees= custodial services; and (4) as a
result, appellees contracted with Meader. 
He also contends appellees have conducted business with other Texas
residents and contracted with an accounting company located in Dallas.








There is apparently no dispute that Scott was located in
Texas at the time of the sale, and that he was acting as an AquaDyn
representative when he sold the water treatment units to Meader.  The record reflects that AquaDyn is a
Mississippi corporation headquartered in Georgia, and appellees are
incorporated and headquartered in California, with no offices outside of that
state.  We first examine whether the
trial court can exercise specific jurisdiction over the appellees.  

1.         Specific
Jurisdiction

When specific jurisdiction is asserted, our minimum contacts
analysis focuses on the relationship among the defendant, the forum, and the
litigation.  Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex.
1991).  Specific jurisdiction over a
nonresident defendant is established if the defendant=s contacts with the forum state have
been purposeful, and plaintiff=s cause of action arises out of or relates to those
contacts.  See Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 472 (1985); Am. Type Culture, 83 S.W.3d at
806.  The defendant=s activities, either direct acts
within Texas or conduct outside Texas, must justify a conclusion that the
defendant could reasonably anticipate being called into a Texas court.  Am. Type Culture, 83 S.W.3d at 806
(citing World‑Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297
(1980)).  A defendant cannot, however, be
haled into a Texas court for the unilateral acts of a third party, or if the
defendant=s contacts with this forum are too
fortuitous or attenuated.  Id.  It is the quality and nature of the defendant=s contacts, rather than their number,
that determines whether an assertion of jurisdiction is proper.  Id.








When multiple defendants are involved, we should examine each
defendant=s contacts with the forum
separately.  Shapolsky v. Brewton,
56 S.W.3d 120, 132 (Tex. App.CHouston [14th Dist.] 2001, pet. denied), disapproved of on
other grounds, Michiana Easy Livin= Country, Inc. v. Holten, 48 Tex. Sup. Ct. J. 789, 2005 WL
1252268, *6 & n.63 (Tex. May 27, 2005). 
In this case, however, Meader does not address each appellee=s contacts individually and, instead,
generally ascribes the alleged contacts to both IRA Resources and Eldorado
jointly.  In our analysis, we will note a
distinction in the character of appellees= respective contacts when necessary
or when the record so reveals. 

a.         The
alleged contacts

Meader alleges the appellees participated in AquaDyn=s scheme to defraud investors by
providing the forms that effectuated the rollover of his then existing
individual retirement account into the AquaDyn investments.  Meader states this act forms the basis of his
litigation. He relies on the following contacts to support specific
jurisdiction: (1) appellees= forms were executed in Texas, (2) appellees charged Texas
residents fees for the SDIRA services, (3) appellees mailed periodic statements
to Texas residents, (4) Meader performed his contract with the appellees in
Texas, and (5) Scott, then employed in Texas by Sentinel, was appellees= agent.  Meader does not allege that appellees made
any direct misrepresentations or otherwise had any direct contact with him.

(1) 
agency








As
evidence of minimum contacts, Meader relies primarily on the fact that he
signed IRA Resources= forms in Texas.  He
also relies on this fact as evidence of the alleged agency. Meader contends
that the Acrucial question@ in determining whether appellees had
purposefully directed activities towards Texas is, AHow did the Defendants= IRA Agreements and forms find their
way into the living room of [Meader]?@ 
He argues that through these forms, Scott sold appellees= custodial services, thus contracting
with a Texas resident.  The law, however,
does not presume agency, and there is no record evidence that Scott was acting
as the appellees= agent.  See Suarez
v. Jordan, 35 S.W.3d 268, 272 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(citing Buchoz v. Klein, 143 Tex. 284, 184 S.W.2d 271, 271 (1944)).  There is nothing in the record to evidence
that IRA Resources or Eldorado had any control over Scott=s solicitation of the AquaDyn
investment or his use of their forms, nor any evidence they manifested any
authority over Scott to Meader.  See
Happy Indus. Corp. v. Am. Specialities, Inc., 983 S.W.2d 844, 852 (Tex.
App.CCorpus Christi 1998, pet. dism=d w.o.j.); see also Walker v. Fed.
Kemper Life Assurance Co., 828 S.W.2d 442, 452 (Tex. App.CSan Antonio 1992, writ denied)
(holding that, even if person acts for another, agency does not exist if person
is not under the other=s control as to means and details of accomplishing the task).

In an
affidavit attached to the special appearance motion, Liane Bruno, president of
IRA Resources, denied that Scott was an agent for IRA Resources, stating in
part the following:

IRA
Resources never exercised any control over Mike Scott, directed any of [Scott=s] activities, or had any contract or other type of
agreement with [Scott]. IRA Resources never authorized [Scott] to act on IRA
Resources= behalf or to market, advertise, or promote IRA
Resources or otherwise solicit business for IRA Resources.  To the best of my knowledge, IRA Resources
never sent any of its forms to Mike Scott.

 

Further, Bruno stated
that IRA Resources was not a resident of Texas, had no offices, employees, or
agents in Texas, had not engaged in any business in this State, and was not
affiliated with AquaDyn in any way.  Likewise,
Eldorado provided a similar affidavit, stating it never had any agents in
Texas, it never had any contact with AquaDyn, or AquaDyn representatives, and
it is a California corporation with no offices or branches outside of that
state.








Other
than the fact Scott provided Meader with appellees= forms, Meader does not assert there
is other evidence of Scott=s alleged agency, and our review of the record reveals none.  Meader did not allege that Scott represented
himself as being appellees= agent.  Further,
although Scott completed the forms for Meader, Scott was listed on the forms as
Meader=s financial advisor, and there is
nothing in the record to indicate that Scott was acting in any other capacity
in preparing the forms on Meader=s behalf.  See IRA Resources, Inc. v. Griego, 161
S.W.3d 248, 255 (Tex. App.CCorpus Christi March 31, 2005, pet. filed) (concluding there
was no evidence that IRA Resources was aware of an individual=s involvement in the transaction, nor
that it approved of such involvement).[7]

Finally,
agency is generally a question of fact.  Happy,
983 S.W.2d at 852.  Although the clerk=s record is before us on appeal, the
reporter=s record from the special appearance
hearing is not, and the trial court did not issue any findings of fact.[8]  Accordingly, we presume the trial court
resolved the question of agency against Meader and in favor of its judgment. See
Am. Type Culture, 83 S.W.3d at 806. 

(2)  IRA Resources= forms

Meader
also asserts that IRA Resources, and thus Eldorado, Aadmitted@ to allowing their account forms to
be used in the sale of AquaDyn units in Texas. 
As evidence, he points to Bruno=s affidavit stating that an AAquaDyn representative@ contacted her to see if AquaDyn
could refer its customers to IRA Resources to establish self-directed
individual retirement accounts.  Although
Bruno admits in her affidavit that an AAquaDyn representative@ contacted her, she does not state
that the representative was in fact Scott. 
This is not evidence that IRA Resources was aware that AquaDyn may
solicit business in Texas.  As noted,
AquaDyn is a Mississippi corporation with its headquarters in Georgia.








Even
were we to interpret Bruno=s statement as suggested by Meader, that it was Scott who
contacted her, this does not evidence that appellees purposefully directed any
actions towards Texas.  See Michiana,
2005 WL 1252268, at *3 (discussing purposeful availment, noting the defendant=s contacts with the forum count, not
the unilateral activity of a plaintiff or a third party); CSR Ltd., 925
S.W.2d at 595.  The evidence establishes
it was Scott who provided IRA Resources= forms to Meader, completed them, and
sold the AquaDyn units, but there is no evidence that appellees Aparticipated@ in the sale or that they directed
any actions towards a Texas resident.[9]


(3)  IRA Resources= contract

The
other Acontact@ alleged by Meader as supporting
specific jurisdiction, is the fact IRA Resources= forms were executed in Texas, the Aappellees@ charged fees to Meader, and mailed
periodic statements to him in Texas.[10]  There is no indication in the record as to
the frequency with which IRA Resources charged fees or mailed the periodic
statements.  But, it is well-established
that a single contract with a Texas resident does not automatically subject a
nonresident defendant to jurisdiction in Texas. 
Burger King, 471 U.S. at 478 (AIf the question is whether an
individual=s contract with an out-of-state party
alone can automatically establish sufficient minimum contacts in the
other party=s forum, we believe the answer
clearly is that it cannot.@); see Michiana, 2005 WL 1252268, at *4; Equitable
Prod. Co. v. Canales-Trevino, 136 S.W.3d 235, 239 (Tex. App.CSan Antonio 2004, pet. denied).  Nor is the fact a contract is partially
performed in Texas determinative of specific jurisdiction.  See TeleVentures, Inc. v. Int=l Game Tech., 12 S.W.3d 900, 910 (Tex. App.CAustin 2000, pet. denied).  








In the
affidavits furnished with the special appearance motion, IRA Resources and
Eldorado both averred they had never marketed, advertised, promoted, or
otherwise solicited business in Texas. 
Further, as shown above, the evidence reflects that the IRA Resources= forms and services found their way
into this forum through Scott or some other AquaDyn representative.  Thus, the fact that Meader executed the forms
in Texas does not serve to establish contact sufficient to support an exercise
of specific jurisdiction over IRA Resources. 
See Michiana, 2005 WL 1252268, at *4B5 (examining the defendant=s contacts with the forum, noting a
nonresident defendant cannot be haled into a Texas court based on random or
fortuitous contacts).    

Nevertheless,
a single contract may be sufficient to establish specific jurisdiction if it
has a Asubstantial connection@ with the forum.  See Guardian Royal Exch., 815 S.W.2d
at 230; see also McGee v. Int=l Life Ins. Co., 355 U.S. 220, 223 (1957).  That connection may exist when there is a
long-term agreement, involving many contacts over a period of time.  See McGee, 355 U.S. at 223; Michiana,
2005 WL 1252268, at *5; see also P.V.F., Inc. v. Pro Metals, Inc., 60
S.W.3d 320, 327 (Tex. App.CHouston [14th Dist.] 2001, pet. denied). 








In this
case, we examine IRA Resources= forms to determine the nature of its and Eldorado=s relationship with Meader.  Under the terms of IRA Resources= forms, it was to serve as an Aadministrator@ of Meader=s SDIRA.  As an administrator, IRA Resources performed Aasset and liability recordkeeping@ for those individuals choosing to
maintain SDIRAs.  The forms expressly
state that the client=s funds are to be deposited in an Eldorado individual
retirement and interest bearing account until the client delivers investment
instructions to the contrary.  The forms
also provide that the SDIRA client acknowledges the investment decisions he
makes are solely his responsibility, that the SDIRA is Anot made in connection with any
investment for sale, private or public and that neither [appellee] offer [sic]
any investment for sale, advise [sic] or endorsement,@ and, further, the client agrees to
hold appellees harmless from any losses incurred as a direct or indirect result
of transfers made under the account. 
Further, any prospectuses, purchase agreements, or offer memorandums
reviewed by IRA Resouces in connection with the SDIRA are reviewed only for
administrative purposes, and IRA Resources Adoes not perform due diligence concerning
the advisability or suitability [of] the investment.@ 
Finally, the forms state Meader=s account agreement is governed by
the law of the state where Athe Trust resides,@ which in this case is
California.  See Michiana, 2005 WL
1252268, at *9 (noting that a forum selection clause may suggest that Ano local availment was intended.@).[11]  In short, IRA Resources= forms indicate its services were
performed in California, pursuant to instructions received from a Texas
resident, and pursuant to his investment decisions.  

The
record indicates the appellees did not initiate contact with Meader, there were
no negotiations between Meader and appellees concerning his SDIRA, and no
evidence that Acontemplated consequences@ arising from the contractual
relationship were directed towards Texas. 
See Burger King, 471 U.S. at 479 (noting that jurisdiction based
on a contract depends on Aprior negotiations and contemplated future consequences,
along with the terms of the contract and the parties= actual course of dealing.@). 
Moreover, Meader does not assert any contract claims against appellees,
nor allege any mishandling of his SDIRA. 
Based on the record evidence, we cannot conclude the agreement between
IRA Resources and Meader had the substantial connection to this forum necessary
to support the exercise of specific jurisdiction.

Moreover,
even though the appellees may have gained some financial benefit from Meader=s SDIRA, A>financial benefits accruing to the
defendant from a collateral relation to the forum State will not support
jurisdiction if they do not stem from a constitutionally cognizable contact
with that State.=@  Michiana, 2005 WL 1252268, at *6 (quoting World‑Wide
Volkswagen, 444 U.S. at 299). 








In sum,
appellees= forms and activities in relation to
Meader=s SDIRA do not evidence that the
appellees could reasonably anticipate being haled into a Texas court for the
causes of action asserted by Meader.  See
Am. Type Culture, 83 S.W.3d at 806. 
His claims arise from the sale of AquaDyn=s water treatment units, sold to him
by one of AquaDyn=s representatives. 
Thus, IRA Resources= services under their agreement with Meader are not at
issue.  See Hanson v. Denckla, 357
U.S. 235, 251B53 (1958) (concluding that execution
of a power of appointment of a trust did not suffice to establish personal
jurisdiction because the issues in the lawsuit were based on the underlying
trust agreement and not on the power of appointment).  In this case, appellees= contacts with this forum are too
random, fortuitous or attenuated to support an assertion of specific
jurisdiction.[12]  See Am. Type Culture, 83 S.W.3d at 806B07; D.H. Blair Inv. Banking Corp.
v. Reardon, 97 S.W.3d 269, 275 (Tex. App.CHouston [14th Dist.] 2002, pet. dism=d w.o.j.).

For
these reasons, we conclude that the record does not support an exercise of
specific jurisdiction over IRA Resources or Eldorado.








2.         General Jurisdiction

Pointing
to the Griego case, Meader also argues that the appellees= activities in connection with the
sale of other unregistered securities in addition to those alleged in this
case, establishes sufficient contacts for Texas courts to assert general
jurisdiction.  He also contends that once
an individual retirement account is rolled over into appellees= SDIRA by a Texas resident, appellees
have continuous and systematic contacts with that resident.

Unlike
specific jurisdiction, general jurisdiction allows a forum to exercise
jurisdiction over a nonresident defendant even if the cause of action did not
arise from or relate to the defendant=s contacts with the forum.  Am. Type Culture, 83 S.W.3d at 806B07. 
An exercise of general jurisdiction is constitutionally permissible when
the defendant=s business contacts with the forum
are Acontinuous and systematic,@ and is a more demanding minimum‑contacts
analysis than with specific jurisdiction. 
See id. at 807.    

Meader
alleged in his pleadings that there were Aat least 50 investors@ he proposed to represent as the
class plaintiff.  In Bruno=s affidavit, however, she stated that
out of the several thousand self-directed individual retirement accounts it administered,
it did so for only two Texas residents holding the AquaDyn water treatment
units.[13]  Meader did not dispute that fact. 

There is
no indication in this record that either IRA Resources or Eldorado (1) has ever
been licensed or qualified to do business in Texas, (2) has any employees,
offices, or bank accounts in Texas, (3) has a mailing address or a telephone
number in Texas, (4) pays taxes in Texas, (5) owns real or personal property in
Texas, (6) advertises in Texas, or (7) has a registered agent for service of
process in Texas.  








Under
these circumstances, Meader has not established facts sufficient to support the
exercise of general jurisdiction.[14]

Moreover,
that IRA Resources may have contracted with an unrelated Texas company to
perform tax accounting work on the SDIRAs does not establish general
jurisdiction.  

Based on
this record, we conclude that neither IRA Resources nor Eldorado has such a general
presence in Texas that they are subject to general jurisdiction.[15]

Conclusion

In sum,
the record in this case does not support an assertion of specific or general
jurisdiction over IRA Resources or Eldorado. 
Accordingly, we affirm the trial court=s judgment granting appellees= special appearance motion.

 

/s/        Eva M.
Guzman

Justice

 

Judgment rendered and Opinion filed
September 13, 2005.

Panel consists of Justices Edelman,
Seymore, and Guzman. 

 

 











[1]  The water
treatment units were sold with a Asite
lease, a lease/back agreement, and a buy/back agreement.@





[2]  The forms were
filled out by Scott and executed by Meader, who was at the time over eighty
years old.  The funds in Meader=s then-existing pension account were transferred from
a financial institution in San Francisco, California, to IRA Resources.





[3]  Tex. Rev. Civ. Stat. Ann. arts. 581‑1
to -43 (Vernon 1964 & Supp. 2004B05).





[4]  Meader alleged
in his petition that at least 50 investors were within the proposed class.  Scott and AquaDyn were not parties to Meader=s suit.  





[5]  Section 17.042
provides as follows:

 

In addition to other acts that may constitute doing
business, a nonresident does business in this state if the nonresident:

 

(1) contracts by mail or otherwise with a Texas
resident and either party is to perform the contract in whole or in part in
this state;

(2) commits a tort in whole or in part in this
state;  or

(3) recruits Texas residents, directly or through an
intermediary located in this state, for employment inside or outside this
state.

 

Tex. Civ. Prac.
& Rem. Code Ann. ' 17.042 (Vernon 1997). 





[6]  The Afair play and substantial justice@ requirement of due process imposes upon the defendant
the burden to present a compelling case that the presence of some consideration
would render jurisdiction unreasonable.  Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
231 (Tex. 1991).  The following factors,
when appropriate, should be considered: (1) the burden on the defendant, (2)
the interests of the forum state in adjudicating the dispute, (3) the
plaintiff's interest in obtaining convenient and effective relief, (4) the
interstate judicial system=s interest in obtaining the most efficient resolution
of controversies, and (5) the shared interest of the several states in
furthering fundamental substantive social policies.  Id. 
Generally, when the nonresident defendant has purposefully established
minimum contacts with the forum state, the exercise of jurisdiction comports
with fair play and substantial justice.  Id.





[7]  Although the Griego
court concluded there was no evidence of apparent agency in that case, the
court did hold that there were sufficient contacts with Texas to permit an
exercise of specific jurisdiction over IRA Resources.  See Griego, 161 S.W.3d at 255.  The Griego court did so, however,
based on IRA Resources= Acontract@ with
the investor.  We discuss the contract as
a Aminimum contact@ later
in this opinion.  





[8]  The trial
court=s docket sheet indicates a hearing on the special
appearance motion was held.





[9]  Even assuming the
identity of the representative is at issue, we must presume the trial court
found that another AquaDyn representative contacted Bruno. 





[10]  Meader refers
to the subject agreement and forms as being IRA Resources= forms, but argues generally that Aappellees@
contracted with him, charged him fees, and mailed the statements.  In its affidavit attached to the special
appearance motion, however, Eldorado averred that its only contract was with
IRA Resources, it never directly charged Meader any fees, nor mailed any
statements to him in Texas.  We
acknowledge that the record indicates IRA Resources was the entity charging the
fees and mailing the statements to Meader. 





[11]  As further
support for our conclusion that a substantial connection with Texas does not
exist, we note that AquaDyn=s contracts provide that A[e]ach party submits to the jurisdiction of any []
court sitting in . . . Mississippi.@





[12]  Meader argues
we must conclude that IRA Resources= Texas
contacts suffice to establish specific jurisdiction as the Griego court
did.  The Griego court concluded
there was specific jurisdiction over IRA Resources relying on evidence that IRA
Resources= contacts increased its  revenues, IRA Resources knew the fees were
coming from a Texas resident, and the cause of action arose from the Texas
contacts.  161 S.W.3d at 255.  But, as noted, a single contract with a Texas
resident does not automatically establish personal jurisdiction, nor does the
fact the nonresident defendant may have benefitted from a Texas contact.  Instead, when determining whether an exercise
of jurisdiction over a nonresident defendant is constitutionally permissible,
the focus must be on the defendant=s purposeful
availment of the benefits and protections of the forum, and the cause of action
must arise out of that purposeful availment. 
See Am. Type Culture, 83 S.W.3d at 806.  Although the Griego court stated that
IRA Resources= contacts with Texas were purposeful, the court did
not discuss the second prong of this test and merely concluded the suit arose
out of the Texas contacts.  Here, the
mere fact that (1) IRA Resources= forms
ended up in Texas, by virtue of Scott=s
actions, and (2) IRA Resources agreed to act as administrator of Meader=s SDIRA, performing its services in California, but
receiving revenues from a Texas resident for doing so, does not equate to the Apurposeful availment@
required to assert specific jurisdiction, nor are Meader=s causes of action in this case arising out of his
agreement with IRA Resources.  See
generally Burger King, 471 U.S. 462 (1985); Keeton v. Hustler Magazine,
Inc., 465 U.S. 770 (1984); Hanson , 357 U.S. 235 (1958); McGee,
355 U.S. 220 (1957).





[13]  Eldorado
provided an affidavit stating that its only contract was with IRA Resources, to
maintain the accounts established by IRA Resources.  





[14]  Griego
is distinguishable.  In Griego,
the court does not address whether IRA Resources had such continuous and
systematic contacts with Texas that an assertion of general jurisdiction would
be proper, and instead, concluded an exercise of specific jurisdiction was
appropriate, and specifically rejected the argument that Eldorado was subject
to the general jurisdiction of a Texas court. 
See Griego, 161 S.W.3d at 255, 257. 





[15]  Having
concluded that the appellees are not subject to specific nor general
jurisdiction, we do not address Meader=s
arguments regarding Afair play and substantial justice.@