James I. MEADER, Individually and on Behalf of All Persons Similarly Situated in the State of Texas, Appellants,

v.

IRA RESOURCES, INC., California Bank & Trust as Successor in Interest to Eldorado Bank, and Eldorado Bank, Appellees.

No. 14–04–00552–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 13, 2005.

Rehearing Overruled Oct. 27, 2005.

340

James H. Miller, Houston, for appellants.

Mike Morris, William Book, Houston, for appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

This appeal arises from the trial court's order granting a special appearance motion filed by IRA Resources, Inc., California Bank & Trust as Successor in Interest to Eldorado Bank and Eldorado Bank ("Eldorado") (collectively, "appellees"). In one issue, appellant James I. Meader challenges the trial court's order, claiming appellees have sufficient minimum contacts with Texas to support an assertion of personal jurisdiction. We conclude that the record evidence does not establish the requisite minimum contacts with this forum, and therefore affirm the trial court's order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Meader, a Texas resident, purchased three water treatment units sold by Aqua-Dyn Technologies, Inc. ("AquaDyn"),[1] for a total cost of $48,000, to be held as an investment. He purchased the units through Mike Scott, who was at the time employed by Sentinel, a company located in Texas. Scott advised Meader that the AquaDyn units would provide a "guaranteed" fifteen percent return on Meader's investment. To facilitate the purchase, Meader opened a Self–Directed Individual Retirement Account ("SDIRA") administered by IRA Resources on behalf of Eldorado, custodian of the SDIRA. Scott provided Meader with the forms necessary to effectuate a transfer of funds from Meader's existing individual retirement account into the SDIRA.[2] The contribution check from Meader's existing retirement account, for $48,375, was made payable to Eldorado Bank for the benefit of Meader. As administrator of the SDIRA, IRA Resources forwarded $48,000 to AquaDyn to purchase the water treatment units on Meader's behalf.

Meader claimed the AquaDyn units were securities requiring registration with the Texas State Securities Board and sued appellees under the Texas Securities Act,[3] individually and on behalf of all Texas residents purchasing the AquaDyn units through SDIRAs.[4] Meader alleged the appellees furthered AquaDyn's scheme to defraud investors by acting as custodian of the SDIRAs, and that the appellees failed to properly investigate the legitimacy of AquaDyn's water treatment units as an investment. Meader also asserted statutory and common-law fraud causes of action, and negligence claims. The appellees filed a special appearance motion, which the trial court granted, and this appeal ensued.

### II. STANDARD OF REVIEW

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002). The trial court's decision to grant

1. The water treatment units were sold with a "site lease, a lease/back agreement, and a buy/back agreement."

2. The forms were filled out by Scott and executed by Meader, who was at the time over eighty years old. The funds in Meader's then-existing pension account were transferred from a financial institution in San Francisco, California, to IRA Resources.

3. TEX.REV.CIV. STAT. ANN. arts. 581–1 to –43 (Vernon 1964 & Supp.2004–05).

4. Meader alleged in his petition that at least 50 investors were within the proposed class. Scott and AquaDyn were not parties to Meader's suit.

or deny a special appearance is subject to de novo review on appeal, but if a factual dispute exists, an appellate court is called upon to review the trial court's resolution of the factual dispute as well. *Id.* at 806; *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). If the trial court does not issue findings of fact, as in this case, a reviewing court should presume the trial court resolved all factual disputes in favor of its judgment. *Am. Type Culture,* 83 S.W.3d at 806.

■ A plaintiff has the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* at 807. When the nonresident defendant files a special appearance motion, he assumes the burden of negating the jurisdictional bases asserted by the plaintiff. *Id.;* see TEX.R. CIV. P. 120a.

### III. DISCUSSION

On appeal, Meader argues the trial court erred in granting the special appearance motion because (1) IRA Resources and Eldorado conducted business in this State, the lawsuit arose out of that business, and therefore, the court has specific jurisdic-

tion; and (2) appellees contracted with other Texas residents and contracted with a Dallas company to perform accounting services, the court has general jurisdiction.

### A. Personal Jurisdiction Over Nonresident Defendants

■ An assertion of personal jurisdiction over nonresident defendants must comport with state statutory and federal constitutional requirements. *Am. Type Culture,* 83 S.W.3d at 806. The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant "doing business" in Texas, and allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will allow." *Id.;* see TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).[5]

■ Personal jurisdiction over nonresident defendants satisfies the constitutional requirements of due process when the defendant has purposefully established minimum contacts with the forum state, and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice.[6] *Marchand,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v.*

---

5. Section 17.042 provides as follows:

   In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

   (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

   (2) commits a tort in whole or in part in this state; or

   (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

   TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

6. The "fair play and substantial justice" requirement of due process imposes upon the defendant the burden to present a compelling

case that the presence of some consideration would render jurisdiction unreasonable. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991). The following factors, when appropriate, should be considered: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Generally, when the nonresident defendant has purposefully established minimum contacts with the forum state, the exercise of jurisdiction comports with fair play and substantial justice. *Id.*

*Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, (1945)). Foreseeability is a factor in the minimum contacts analysis, but it alone will not support personal jurisdiction. *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996). A defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Am. Type Culture,* 83 S.W.3d at 806.

In his pleadings, Meader stated the trial court had jurisdiction over appellees because all or a substantial part of the events or omissions giving rise to his claims occurred in Texas, the transaction giving rise to the cause of action occurred in Texas, the appellees "had agents" in Texas, and Meader is a Texas resident. Further, Meader alleged his suit arose as follows:

> This case arises out of Defendants' actually participated [sic] in and provided assistance to a scheme to defraud innocent investors out of their retirement dollars. In its role as a custodian of IRAs and/or custodian for self-directed IRAs for [AquaDyn] customers, Defendants actually participated in the sale of unregistered securities and rendered substantial assistance by providing investment mechanisms that allowed AquaDyn customers to invest their IRA funds into AquaDyn [sic] securities.

> \* \* \* \*

> AquaDyn approached IRA Resources and Eldorado and requested and received approval to sell their IRA custodian services along with the water treatment systems in order to facilitate sales to persons that had funds in retirement accounts to invest. IRA Resources and Eldorado conspired with AquaDyn to provide qualified IRAs and self-directed IRA custodial accounts to allow to [sic] investors ... to invest in AquaDyn without paying such penalties.

Based on these allegations, Meader asserted the following causes of action: (1) violations of Article 581–33 of the Texas Securities Act; (2) "Statutory Stock Fraud;" (3) common law fraud; (4) negligent misrepresentation; and (5) negligence.

In his brief, Meader argues the record evidence establishes the following contacts in support of specific jurisdiction: (1) Scott was the agent for IRA Resources and AquaDyn; (2) Scott sold the water treatment units to Meader in Texas; (3) in conjunction with the sale, Scott sold appellees' custodial services; and (4) as a result, appellees contracted with Meader. He also contends appellees have conducted business with other Texas residents and contracted with an accounting company located in Dallas.

There is apparently no dispute that Scott was located in Texas at the time of the sale, and that he was acting as an AquaDyn representative when he sold the water treatment units to Meader. The record reflects that AquaDyn is a Mississippi corporation headquartered in Georgia, and appellees are incorporated and headquartered in California, with no offices outside of that state. We first examine whether the trial court can exercise specific jurisdiction over the appellees.

**1. Specific Jurisdiction**

When specific jurisdiction is asserted, our minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1991). Specific jurisdiction over a nonresident defendant is established if the defendant's contacts with the forum state have been purposeful, and plaintiff's cause of action arises out of or relates to those contacts. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Am. Type Culture*, 83 S.W.3d at 806. The defendant's activities, either direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Am. Type Culture*, 83 S.W.3d at 806 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A defendant cannot, however, be haled into a Texas court for the unilateral acts of a third party, or if the defendant's contacts with this forum are too fortuitous or attenuated. *Id.* It is the quality and nature of the defendant's contacts, rather than their number, that determines whether an assertion of jurisdiction is proper. *Id.*

■ When multiple defendants are involved, we should examine each defendant's contacts with the forum separately. *Shapolsky v. Brewton*, 56 S.W.3d 120, 132 (Tex.App.-Houston [14th Dist.] 2001, pet. denied), *disapproved of on other grounds, Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788–89 (Tex.2005). In this case, however, Meader does not address each appellee's contacts individually and, instead, generally ascribes the alleged contacts to both IRA Resources and Eldorado jointly. In our analysis, we will note a distinction in the character of appellees' respective contacts when necessary or when the record so reveals.

### a. The alleged contacts

■ Meader alleges the appellees participated in AquaDyn's scheme to defraud investors by providing the forms that effectuated the rollover of his then existing individual retirement account into the AquaDyn investments. Meader states this act forms the basis of his litigation. He relies on the following contacts to support specific jurisdiction: (1) appellees' forms were executed in Texas, (2) appellees charged Texas residents fees for the SDI-RA services, (3) appellees mailed periodic statements to Texas residents, (4) Meader performed his contract with the appellees in Texas, and (5) Scott, then employed in Texas by Sentinel, was appellees' agent. Meader does not allege that appellees made any direct misrepresentations or otherwise had any direct contact with him.

### (1) agency

■ As evidence of minimum contacts, Meader relies primarily on the fact that he signed IRA Resources' forms in Texas. He also relies on this fact as evidence of the alleged agency. Meader contends that the "crucial question" in determining whether appellees had purposefully directed activities towards Texas is, "How did the Defendants' IRA Agreements and forms find their way into the living room of [Meader]?" He argues that through these forms, Scott sold appellees' custodial services, thus contracting with a Texas resident. The law, however, does not presume agency, and there is no record evidence that Scott was acting as the appellees' agent. *See Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271, 271 (1944)). There is nothing in the record to evidence that IRA Resources or Eldorado had any control over Scott's solicitation of the AquaDyn investment or his use of their forms, nor any evidence they manifested any authority over Scott to Meader. *See Happy Indus. Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.); *see also Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex. App.-San Antonio 1992, writ denied) (holding that, even if person acts for another, agency does not exist if person is not

under the other's control as to means and details of accomplishing the task).

In an affidavit attached to the special appearance motion, Liane Bruno, president of IRA Resources, denied that Scott was an agent for IRA Resources, stating in part the following:

> IRA Resources never exercised any control over Mike Scott, directed any of [Scott's] activities, or had any contract or other type of agreement with [Scott]. IRA Resources never authorized [Scott] to act on IRA Resources' behalf or to market, advertise, or promote IRA Resources or otherwise solicit business for IRA Resources. To the best of my knowledge, IRA Resources never sent any of its forms to Mike Scott.

Further, Bruno stated that IRA Resources was not a resident of Texas, had no offices, employees, or agents in Texas, had not engaged in any business in this State, and was not affiliated with AquaDyn in any way. Likewise, Eldorado provided a similar affidavit, stating it never had any agents in Texas, it never had any contact with AquaDyn, or AquaDyn representatives, and it is a California corporation with no offices or branches outside of that state.

Other than the fact Scott provided Meader with appellees' forms, Meader does not assert there is other evidence of Scott's alleged agency, and our review of the record reveals none. Meader did not allege that Scott represented himself as being appellees' agent. Further, although Scott completed the forms for Meader, Scott was listed on the forms as Meader's

financial advisor, and there is nothing in the record to indicate that Scott was acting in any other capacity in preparing the forms on Meader's behalf. *See IRA Resources, Inc. v. Griego,* 161 S.W.3d 248, 255 (Tex.App.-Corpus Christi March 31, 2005, pet. filed) (concluding there was no evidence that IRA Resources was aware of an individual's involvement in the transaction, nor that it approved of such involvement).[7]

██ Finally, agency is generally a question of fact. *Happy,* 983 S.W.2d at 852. Although the clerk's record is before us on appeal, the reporter's record from the special appearance hearing is not, and the trial court did not issue any findings of fact.[8] Accordingly, we presume the trial court resolved the question of agency against Meader and in favor of its judgment. *See Am. Type Culture,* 83 S.W.3d at 806.

### (2) IRA Resources' forms

Meader also asserts that IRA Resources, and thus Eldorado, "admitted" to allowing their account forms to be used in the sale of AquaDyn units in Texas. As evidence, he points to Bruno's affidavit stating that an "AquaDyn representative" contacted her to see if AquaDyn could refer its customers to IRA Resources to establish self-directed individual retirement accounts. Although Bruno admits in her affidavit that an "AquaDyn representative" contacted her, she does not state that the representative was in fact Scott. This is not evidence that IRA Resources was aware that AquaDyn may solicit busi-

---

**7.** Although the *Griego* court concluded there was no evidence of apparent agency in that case, the court did hold that there were sufficient contacts with Texas to permit an exercise of specific jurisdiction over IRA Resources. *See Griego,* 161 S.W.3d at 255. The *Griego* court did so, however, based on IRA

Resources' "contract" with the investor. We discuss the contract as a "minimum contact" later in this opinion.

**8.** The trial court's docket sheet indicates a hearing on the special appearance motion was held.

ness in Texas. As noted, AquaDyn is a Mississippi corporation with its headquarters in Georgia.

Even were we to interpret Bruno's statement as suggested by Meader, that it was Scott who contacted her, this does not evidence that appellees purposefully directed any actions towards Texas. *See Michiana,* 168 S.W.3d at 784–85 (discussing purposeful availment, noting the defendant's contacts with the forum count, not the unilateral activity of a plaintiff or a third party); *CSR Ltd.,* 925 S.W.2d at 595. The evidence establishes it was Scott who provided IRA Resources' forms to Meader, completed them, and sold the AquaDyn units, but there is no evidence that appellees "participated" in the sale or that they directed any actions towards a Texas resident.[9]

### (3) IRA Resources' contract

■ The other "contact" alleged by Meader as supporting specific jurisdiction, is the fact IRA Resources' forms were executed in Texas, the "appellees" charged fees to Meader, and mailed periodic statements to him in Texas.[10] There is no indication in the record as to the frequency with which IRA Resources charged fees or mailed the periodic statements. But, it is well-established that a single contract with a Texas resident does not automatically subject a nonresident defendant to jurisdiction in Texas. *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically

establish sufficient minimum contacts in the other party's forum, we believe the answer clearly is that it cannot."); *see Michiana,* 168 S.W.3d at 786; *Equitable Prod. Co. v. Canales–Trevino,* 136 S.W.3d 235, 239 (Tex.App.-San Antonio 2004, pet. denied). Nor is the fact a contract is partially performed in Texas determinative of specific jurisdiction. *See TeleVentures, Inc. v. Int'l Game Tech.,* 12 S.W.3d 900, 910 (Tex.App.-Austin 2000, pet. denied).

In the affidavits furnished with the special appearance motion, IRA Resources and Eldorado both averred they had never marketed, advertised, promoted, or otherwise solicited business in Texas. Further, as shown above, the evidence reflects that the IRA Resources' forms and services found their way into this forum through Scott or some other AquaDyn representative. Thus, the fact that Meader executed the forms in Texas does not serve to establish contact sufficient to support an exercise of specific jurisdiction over IRA Resources. *See Michiana,* 168 S.W.3d at 785–87 (examining the defendant's contacts with the forum, noting a nonresident defendant cannot be haled into a Texas court based on random or fortuitous contacts).

■ Nevertheless, a single contract may be sufficient to establish specific jurisdiction if it has a "substantial connection" with the forum. *See Guardian Royal Exch.,* 815 S.W.2d at 230; *see also McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). That connection may exist when there is a long-

---

9. Even assuming the identity of the representative is at issue, we must presume the trial court found that another AquaDyn representative contacted Bruno.

10. Meader refers to the subject agreement and forms as being IRA Resources' forms, but argues generally that "appellees" contracted with him, charged him fees, and mailed the statements. In its affidavit attached to the

special appearance motion, however, Eldorado averred that its only contract was with IRA Resources, it never directly charged Meader any fees, nor mailed any statements to him in Texas. We acknowledge that the record indicates IRA Resources was the entity charging the fees and mailing the statements to Meader.

term agreement, involving many contacts over a period of time. *See McGee,* 355 U.S. at 223, 78 S.Ct. 199; *Michiana,* 168 S.W.3d at 787; *see also P.V.F., Inc. v. Pro Metals, Inc.,* 60 S.W.3d 320, 327 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

In this case, we examine IRA Resources' forms to determine the nature of its and Eldorado's relationship with Meader. Under the terms of IRA Resources' forms, it was to serve as an "administrator" of Meader's SDIRA. As an administrator, IRA Resources performed "asset and liability recordkeeping" for those individuals choosing to maintain SDIRAs. The forms expressly state that the client's funds are to be deposited in an Eldorado individual retirement and interest bearing account until the client delivers investment instructions to the contrary. The forms also provide that the SDIRA client acknowledges the investment decisions he makes are solely his responsibility, that the SDIRA is "not made in connection with any investment for sale, private or public and that neither [appellee] offer [sic] any investment for sale, advise [sic] or endorsement," and, further, the client agrees to hold appellees harmless from any losses incurred as a direct or indirect result of transfers made under the account. Further, any prospectuses, purchase agreements, or offer memorandums reviewed by IRA Resources in connection with the SDIRA are reviewed only for administrative purposes, and IRA Resources "does not perform due diligence concerning the advisability or suitability [of] the investment." Finally, the forms state Meader's account agreement is governed by the law of the state where "the Trust resides," which in this case is California. *See Michiana,* 168 S.W.3d at 792 (noting that a

forum selection clause may suggest that "no local availment was intended.").[11] In short, IRA Resources' forms indicate its services were performed in California, pursuant to instructions received from a Texas resident, and pursuant to his investment decisions.

The record indicates the appellees did not initiate contact with Meader, there were no negotiations between Meader and appellees concerning his SDIRA, and no evidence that "contemplated consequences" arising from the contractual relationship were directed towards Texas. *See Burger King,* 471 U.S. at 479, 105 S.Ct. 2174 (noting that jurisdiction based on a contract depends on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."). Moreover, Meader does not assert any contract claims against appellees, nor allege any mishandling of his SDIRA. Based on the record evidence, we cannot conclude the agreement between IRA Resources and Meader had the substantial connection to this forum necessary to support the exercise of specific jurisdiction.

■ Moreover, even though the appellees may have gained some financial benefit from Meader's SDIRA, " 'financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.' " *Michiana,* 168 S.W.3d at 788 (quoting *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. 559).

■ In sum, appellees' forms and activities in relation to Meader's SDIRA do not evidence that the appellees could reasonably anticipate being haled into a Texas

---

11. As further support for our conclusion that a substantial connection with Texas does not exist, we note that AquaDyn's contracts provide that "[e]ach party submits to the jurisdiction of any [ ] court sitting in ... Mississippi."

court for the causes of action asserted by Meader. *See Am. Type Culture*, 83 S.W.3d at 806. His claims arise from the sale of AquaDyn's water treatment units, sold to him by one of AquaDyn's representatives. Thus, IRA Resources' services under their agreement with Meader are not at issue. *See Hanson v. Denckla*, 357 U.S. 235, 251–53, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (concluding that execution of a power of appointment of a trust did not suffice to establish personal jurisdiction because the issues in the lawsuit were based on the underlying trust agreement and not on the power of appointment). In this case, appellees' contacts with this forum are too random, fortuitous or attenuated to support an assertion of specific jurisdiction.[12] *See Am. Type Culture*, 83 S.W.3d at 806–07; *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 275 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.).

For these reasons, we conclude that the record does not support an exercise of specific jurisdiction over IRA Resources or Eldorado.

### 2. General Jurisdiction

■ Pointing to the *Griego* case, Meader also argues that the appellees' activities in connection with the sale of other unregistered securities in addition to those alleged in this case, establishes sufficient contacts for Texas courts to assert general jurisdiction. He also contends that once an individual retirement account is rolled over into appellees' SDIRA by a Texas resident, appellees have continuous and systematic contacts with that resident.

■ Unlike specific jurisdiction, general jurisdiction allows a forum to exercise jurisdiction over a nonresident defendant even if the cause of action did not arise from or relate to the defendant's contacts with the forum. *Am. Type Culture*, 83 S.W.3d at 806–07. An exercise of general jurisdiction is constitutionally permissible when the defendant's business contacts with the forum are "continuous and systematic," and is a more demanding minimum-contacts analysis than with specific jurisdiction. *See id.* at 807.

Meader alleged in his pleadings that there were "at least 50 investors" he pro-

12. Meader argues we must conclude that IRA Resources' Texas contacts suffice to establish specific jurisdiction as the *Griego* court did. The *Griego* court concluded there was specific jurisdiction over IRA Resources relying on evidence that IRA Resources' contacts increased its revenues, IRA Resources knew the fees were coming from a Texas resident, and the cause of action arose from the Texas contacts. 161 S.W.3d at 255. But, as noted, a single contract with a Texas resident does not automatically establish personal jurisdiction, nor does the fact the nonresident defendant may have benefitted from a Texas contact. Instead, when determining whether an exercise of jurisdiction over a nonresident defendant is constitutionally permissible, the focus must be on the defendant's purposeful availment of the benefits and protections of the forum, and the cause of action must arise out of that purposeful availment. *See Am. Type Culture*, 83 S.W.3d at 806. Although the *Grie-*

go court stated that IRA Resources' contacts with Texas were purposeful, the court did not discuss the second prong of this test and merely concluded the suit arose out of the Texas contacts. Here, the mere fact that (1) IRA Resources' forms ended up in Texas, by virtue of Scott's actions, and (2) IRA Resources agreed to act as administrator of Meader's SDIRA, performing its services in California, but receiving revenues from a Texas resident for doing so, does not equate to the "purposeful availment" required to assert specific jurisdiction, nor are Meader's causes of action in this case arising out of his agreement with IRA Resources. *See generally Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Hanson*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

posed to represent as the class plaintiff. In Bruno's affidavit, however, she stated that out of the several thousand self-directed individual retirement accounts it administered, it did so for only two Texas residents holding the AquaDyn water treatment units.[13] Meader did not dispute that fact.

There is no indication in this record that either IRA Resources or Eldorado (1) has ever been licensed or qualified to do business in Texas, (2) has any employees, offices, or bank accounts in Texas, (3) has a mailing address or a telephone number in Texas, (4) pays taxes in Texas, (5) owns real or personal property in Texas, (6) advertises in Texas, or (7) has a registered agent for service of process in Texas.

Under these circumstances, Meader has not established facts sufficient to support the exercise of general jurisdiction.[14]

Moreover, that IRA Resources may have contracted with an unrelated Texas company to perform tax accounting work on the SDIRAs does not establish general jurisdiction.

Based on this record, we conclude that neither IRA Resources nor Eldorado has such a general presence in Texas that they are subject to general jurisdiction.[15]

## CONCLUSION

In sum, the record in this case does not support an assertion of specific or general jurisdiction over IRA Resources or Eldorado. Accordingly, we affirm the trial court's judgment granting appellees' special appearance motion.

---

13. Eldorado provided an affidavit stating that its only contract was with IRA Resources, to maintain the accounts established by IRA Resources.

14. *Griego* is distinguishable. In *Griego*, the court does not address whether IRA Resources had such continuous and systematic contacts with Texas that an assertion of general jurisdiction would be proper, and instead, concluded an exercise of specific jurisdiction was appropriate, and specifically rejected the argument that Eldorado was subject to the general jurisdiction of a Texas court. *See Griego*, 161 S.W.3d at 255, 257.

15. Having concluded that the appellees are not subject to specific nor general jurisdiction, we do not address Meader's arguments regarding "fair play and substantial justice."