**IRA RESOURCES, INC.,**
**et al., Appellants,**

**v.**

**Enrique Juan GRIEGO and Sonya**
**Griego, Appellees.**

**No. 13–04–101–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 16, 2007.

Charles C. Murray, Lisa Powell, Atlas & Hall, L.L.P., McAllen, Sparber Rudolph Annen, Richard J. Annen, Todd R. Gabriel, San Diego, CA, for appellants.

James H. Miller, Houston, Roberto J. Yzaguirre, Jose E. Chapa, Jr., Yzaguirre & Chapa, Manuel Guerra, III, McAllen, for appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION ON REMAND

Opinion on remand by Justice GARZA.

IRA Resources, Inc., appeals the denial of its special appearance in a securities lawsuit filed against it by Enrique Juan Griego and Sonya Griego. Based on a factually similar case, the Texas Supreme Court concluded that the trial court lacked specific jurisdiction over IRA Resources. *See IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 599 (Tex.2007) (per curiam) (citing *Meader v. IRA Res., Inc.,* 178 S.W.3d 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.)).[1] The case is currently before us on

---

1. On original submission, this Court affirmed the trial court's order denying the special appearances of IRA Resources and reversed and rendered the trial court's order denying the special appearances of the other defendants, Eldorado Bank and California Bank & Trust, as successor to Eldorado Bank. *See IRA Res., Inc. v. Griego,* 161 S.W.3d 248, 251

remand for consideration of general jurisdiction. *See id.* We reverse and render judgment dismissing this action for lack of personal jurisdiction.

## Background

IRA Resources is a California corporation headquartered in San Diego County, California. IRA is in the business of providing asset and liability record keeping and administration to individuals who maintain self-directed individual retirement accounts.

In April 2001, the Griegos were approached by Abraham Martinez about an investment opportunity in "Customer Owned Coin Operated Telephones" through American Telecommunications Company, Inc. ("ATC"). The Griegos entered a service contract with Alpha Tel-Com, Inc. ("Alpha"), ATC's parent corporation, under which Alpha would maintain the phones and the Griegos would receive a guaranteed percentage of revenues.

To fund the investment, the Griegos rolled an individual retirement account ("IRA") into a self-directed IRA administered by IRA Resources. Martinez provided the Griegos with forms to open the IRA account and execute the rollover, an investment directive to purchase the phones, and an indemnity agreement in favor of IRA Resources. The Griegos completed the forms and tendered a check for $25,500 payable to IRA Resources and a $50 money order payable to IRA Resources, and forwarded these items to IRA Resources in California. IRA Resources retained the $50 money order as an account initiation fee and opened a self-directed IRA for the Griegos. The check for $25,500 was deposited in a California bank account for the benefit of self-directed IRA holders. IRA Resources issued a check in the amount of $25,000 payable to ATC to purchase the telephones. IRA Resources acted as the third-party administrator of the Griego's self-directed IRA, providing certain record-keeping services such as issuing quarterly investment performance statements and reporting IRA income to the Internal Revenue Service. It provided no investment advice, recommendations or endorsements.

In June 2001, ATC ceased making payments to the owners of the telephones ultimately resulting in the investment failing. The Griegos sued IRA Resources and others alleging that (1) the Griego's sale and service agreement with ATC and Alpha constituted the illegal sale of an unregistered security in violation of the Texas Securities Act, and (2) IRA Resources participated in this illegal sale by providing the underlying investment mechanism and by aiding and abetting ATC and Alpha in a scheme to defraud investors. *See* TEX.REV.CIV. STAT. ANN. art. 581–33F(1)–(2) (Vernon Supp.2006).

All defendants filed special appearances arguing that Texas courts could exercise neither specific nor general jurisdiction over them. *See* TEX.R. CIV. P. 120a. The trial court denied the special appearances. As directed by the supreme court, we now examine whether IRA Resources is subject to the general jurisdiction of Texas courts.

## Standard of Review

██ The burdens of proof, standards of review, and jurisdictional laws applicable to the filing of a special appearance by a nonresident defendant are now well settled. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793–96 (Tex. 2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the

provisions of the Texas long-arm statute. *Id.* at 793; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The burden of proof then shifts to the nonresident to negate all possible grounds for personal jurisdiction. *BMC Software,* 83 S.W.3d at 793. The existence of personal jurisdiction is a question of law, which we determine de novo. *Id.* at 794.

### Personal Jurisdiction

 In order for a court to exercise personal jurisdiction over a nonresident defendant, due process requires the defendant to have purposefully established such minimum contacts with the forum state that it could reasonably anticipate being sued in the courts of the state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.* 815 S.W.2d 223, 226 (Tex.1991); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). The exercise of jurisdiction must also comport with fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software,* 83 S.W.3d at 795–96.

 General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from, or relate to, activities conducted within the forum state. *BMC Software,* 83 S.W.3d at 796. General jurisdiction requires a showing that the defendant "conducted substantial activities within the forum, a more demanding mini-

mum contacts analysis than for specific jurisdiction." *Id.* at 797 (quoting *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996) (orig.proceeding)). In contrast, specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software,* 83 S.W.3d at 796. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005).

In the instant case, the supreme court has determined that the trial court lacks specific jurisdiction over IRA Resources. *See IRA Res., Inc.,* 221 S.W.3d at 599. Accordingly, we proceed with our analysis regarding whether IRA Resources is subject to general jurisdiction.

### General Jurisdiction

 General jurisdiction is premised on the notion of consent. *See Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 808 (Tex.2002). That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there. *Id.* When determining whether general jurisdiction exists, we do not view each contact in isolation. *Id.* Rather, all contacts must be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity. *Id.;* *Schlobohm v. Schapiro,* 784 S.W.2d 355, 359 (Tex.1990).

In support of their general jurisdiction claim, the Griegos argue the following as evidence of IRA Resources's continuous and systematic contacts in Texas with Texas residents: (1) the IRAs held or administered by IRA Resources; (2) distribution of forms in Texas by agents; (3) contact

with Texas residents through statements and invoices and fees charged for those services; and (4) the contract related to the IRA was performed in Texas. Curiously, however, the Griegos state in their brief that "neither IRA Resources nor Eldorado provided the trial court with any information regarding the amount of business they actually have with Texas residents."[2] We can infer from this statement that the Griegos, likewise, did not produce evidence of IRA's volume of business in Texas.

In their live petition, the Griegos allege that:

- IRA Resources does substantial business in the State of Texas by managing Individual Retirement Accounts (IRA's).

- Defendants IRA Resources and Eldorado assisted in a scheme to defraud innocent investors out of millions of dollars in their role as a manager of IRAs and/or custodian for self-directed IRAs for Alpha Telecommunications customers.

- IRA Resources and Eldorado rendered substantial assistance by providing investment mechanisms that allowed Alpha customers to invest their IRA funds into Alpha's unregistered securities.

- IRA Resources and Eldorado conspired with Alpha to provide qualified IRAs and self-directed IRA custodial accounts to allow investors such as the Griegos to invest in Alpha without paying such penalties.

- IRA Resources and Eldorado were actually in the chain of sale for the Alpha pay telephones lease packages.

- In furtherance of Alpha's scheme, IRA Resources and Eldorado rendered substantial assistance to Alpha in defrauding the Griegos, and others similarly situated to invest their hard earned money (otherwise safely earning interest in legitimate IRA's) into purchasing Alpha's fraudulent and unregistered securities.

To support its request for certification of a class, the Griegos allege that:

- Plaintiffs, upon information and belief, assert that at least 100 investors were Texas residents who appointed IRA Resources and Eldorado as a custodian during the proposed class period for the purpose of holding Alpha Telcom pay telephone lease packages.

- Plaintiffs assert, upon information and belief, that at least 1500 Texas residents, many of them relatively old and poor, invested in Alpha Telcom pay telephone lease packages.

The burden was on IRA Resources to negate the above allegations. *BMC Software*, 83 S.W.3d at 793. In support of its special appearance, IRA Resources established that it is incorporated in California and its principal place of business is in San Diego County, California. It does not have offices or agents in Texas. It does not advertise, conduct business, or solicit customers in Texas. No officer, director, shareholder, or employee has ever been to Texas in the scope of their employment with IRA Resources. Instead, IRA Resources administers self-directed individual retirement accounts at its office in San Diego, California. IRA Resources, as the account administrator, merely keeps the records for the client's self-directed IRA account, provides quarterly statements of investment status, and supplies regularly

---

**2.** Although the Griegos make this statement, IRA provided evidence of the number of Texas residents for whom it administers self-directed accounts. We consider this evidence later in the opinion.

required reports to the individual and the IRS.

In response to the special appearance, appellees attached copies of a packet of marketing materials and forms used by Martinez, including IRA forms and instructions allegedly provided by IRA Resources. The Griegos' claim that this is evidence that IRA Resources "specifically participated in this (transaction) and many other similar transactions throughout Texas." IRA Resources denied ever seeing the packet and testified that the forms made part of the packet had been modified without IRA Resources's knowledge, consent or authority.

Even if this packet of information is competent evidence of IRA Resources's participation in the transaction with appellees, there is no evidence of "many other similar transactions throughout Texas" to support continuous and systematic contacts. Appellees allege that "Bankruptcy Court information indicates that approximately 1,200 Texas households lost their investments" in this scheme. Again, however, appellees provide no evidence to support this claim. IRA Resources negates this claim with evidence that "IRA (Resources) administers self-directed IRA accounts for only 24 individuals who reside in Texas and hold an ATC investment in their self-directed IRA account."

The supreme court has directed us to a Fourteenth Court of Appeals' opinion with "virtually identical facts," *Meader v. IRA Resources, Inc.,* 178 S.W.3d 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.), which was decided after we issued our opinion. In *Meader,* as here, IRA Resources accepted a $50 account-initiation fee, opened Meader's self-directed IRA, and mailed him periodic account statements. The supreme court agreed with the Houston court's finding that "those incidental contacts are constitutionally insufficient" to

establish jurisdiction. In its review of general jurisdiction, the Houston court found there was no evidence in the record that IRA Resources (1) had ever been licensed or qualified to do business in Texas, (2) had any employees, offices, or bank accounts in Texas, (3) had a mailing address or a telephone number in Texas, (4) paid taxes in Texas, (5) owned real or personal property in Texas, (6) advertised in Texas, or (7) had a registered agent for service of process in Texas. *See id.* at 350. We find the same to be true in this case.

It appears the only possible evidence of continuous and systematic contacts in Texas are the 24 individual accounts that IRA Resources admits to servicing. So, the question before us then is, whether the servicing of these 24 individuals is sufficient such that IRA Resources could reasonably anticipate being sued in the courts of this state. *See Commonwealth Gen. Corp. v. York,* 177 S.W.3d 923, 924 (Tex. 2005).

The undisputed record shows that IRA Resources's procedure is that it receives at its office in San Diego, California, a completed account application and investment directive from a client desiring to open a self-directed individual retirement account. IRA Resources reviews the application and investment directive for completeness. If properly completed, IRA Resources accepts the application and agrees to act as the administrator of the client's self-directed individual retirement account pursuant to all applicable laws and regulations. IRA Resources keeps the records for the client's self-directed IRA account, provides quarterly statements of investment status, and supplies regularly required reports to the individual and the IRS.

IRA Resources does not directly or through agents actively market its services anywhere, including Texas. IRA Resources was contacted by an ATC repre-

sentative asking if it could refer its customers to IRA Resources if they wanted to establish a self-directed IRA account. IRA Resources informed the ATC representative that IRA Resources could act as the administrator for anyone desiring to establish a self-directed IRA, and the required paperwork would be forwarded to anyone who requested it.

Here, we are not persuaded that the quality of IRA Resources's contacts support general jurisdiction as defined by the United States Supreme Court. In fact, IRA Resources's contacts in Texas are less significant than those considered by the Texas Supreme Court in *American Type Culture* and by the United States Supreme Court in *Helicopteros Nacionales*. *See Helicopteros Nacionales,* 466 U.S. at 418, 104 S.Ct. 1868; *Am. Type Culture,* 83 S.W.3d at 807. Appellees have not established facts sufficient to support the exercise of general jurisdiction over IRA Resources. We reverse the trial court's order and render judgment dismissing the case against IRA Resources for lack of personal jurisdiction.