**Affirmed and Memorandum Opinion filed September 25, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00789-CV

### FALCON CREST AVIATION SUPPLY, INC., Appellant

### V.

### JET MANAGEMENT, LLC, MIKE HANZEL, W.C.S. ONE, LLC AND HOSSEIN TARAGHI, Appellees

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-53397**

## M E M O R A N D U M   O P I N I O N

Appellant Falcon Crest Aviation Supply, Inc. challenges the trial court's order granting appellees' special appearance and dismissing the underlying case. In two issues, Falcon Crest asserts appellees made sufficient contacts with Texas to establish personal jurisdiction. We affirm.

*Background*

Each appellee is a Colorado resident. Appellee Hossein Taraghi is the sole owner of appellee W.C.S. One, LLC. W.C.S. One is an entity whose single purpose is to own a Falcon 200 private jet that was purchased in 2008. Appellee Mike Hanzel is the Falcon 200's pilot and a salaried employee of W.C.S. One. Hanzel is also the sole owner of appellee Jet Management, LLC, a company that provides management, maintenance, and crew services for private jets. Jet Management was formed in 2001 or 2002, several years before Hanzel became an employee of W.C.S. One. Jet Management had "[v]ery little" role in management, maintenance, and crew services for the Falcon 200, but Hanzel had preexisting relationships with vendors through Jet Management when he became an employee of W.C.S. One. With regard to those vendors who had preexisting relationships with Jet Management, "in lieu of having the [Falcon 200] owner[] have [sic] to go through a credit history report or anything like that again," Hanzel purchased parts and services for the Falcon 200 through Jet Management. Falcon Crest, an aviation supply company, was one of those vendors. Falcon Crest is a Texas corporation.

Jet Management purchased two actuators and other parts from Falcon Crest that were needed for repairs on the Falcon 200 to be performed in Colorado. In exchange for a reduction in the purchase price of the new actuators, the Falcon 200's used actuators were hand-delivered to Falcon Crest's supply office in Englewood, Colorado to be refurbished and resold by Falcon Crest. All of appellees' interactions with Falcon Crest were with employees who worked at the Englewood office. Falcon Crest sent the used actuators to vendors to be evaluated and ultimately sent them to Falcon Crest's main office in Houston, Texas. Falcon Crest alleged that at least one of the actuators could not be refurbished and accordingly sent Jet Management two invoices totaling approximately $33,000 in chargeback fees. Hanzel disputed those fees, and they were not paid. However, appellees remitted other invoice payments to Falcon Crest's Houston office.

Falcon Crest sued appellees, alleging, in relevant part, that appellees breached contractual obligations to Falcon Crest by refusing to pay the chargeback fees and

2

defrauded Falcon Crest by misrepresenting the quality of the used actuators and misrepresenting to whom Falcon Crest was selling the parts. Appellees filed a special appearance, challenging the trial court's personal jurisdiction. After allowing Falcon Crest to conduct jurisdictional discovery, the trial court granted the special appearance, finding in its order that appellees "did not purposely avail themselves of the benefits of Texas law" and "did not have a continuous or systematic presence in Texas." The trial court did not issue findings of fact or conclusions of law.

## *Discussion*

In two issues, Falcon Crest complains that the trial court erred in granting appellees' special appearance because appellees had sufficient contacts with Texas based on the following grounds: (1) appellees "committed torts and other wrongful acts against a corporation located in . . . Texas";[1] (2) appellees purchased parts from Falcon Crest, a Texas corporation; (3) Falcon Crest sent parts to appellees from Texas; and (4) appellees were required to pay and sent payments to Falcon Crest in Texas. Falcon Crest does not distinguish between whether these contacts allegedly conferred specific or general jurisdiction on the Texas court.[2] For the reasons set forth below, we hold these contacts were not sufficient to confer either specific or general jurisdiction over appellees in Texas.

---

[1] Specifically, Falcon Crest argues appellees committed fraud in two ways: (1) by misrepresenting that the used actuators they provided to Falcon Crest could be refurbished when at least one could not and (2) by misrepresenting that Jet Management was the purchaser when the parts were purchased for W.C.S. One and Taraghi, which deprived Falcon Crest of the opportunity to check their credit. Falcon Crest does not specify what other "torts and . . . wrongful acts" appellees allegedly committed.

[2] Falcon Crest included the standards of review for both specific and general jurisdiction in its brief, but argued only that "the trial court has *personal* jurisdiction over Appellees." (Emphasis added.) Falcon Crest did not argue that appellees had "continuous and systematic" contacts with Texas, as required for general jurisdiction. Construing Falcon Crest's brief liberally, we analyze both specific and general jurisdiction.

## I. Standards of Review

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002); *Meader v. IRA Res., Inc.*, 178 S.W.3d 338, 342 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The trial court's decision to grant or deny a special appearance is subject to de novo review on appeal, but if a factual dispute exists, an appellate court is called upon to review the trial court's resolution of the factual dispute as well. *Coleman*, 83 S.W.3d at 806; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Meader*, 178 S.W.3d at 342-43. If the trial court does not issue findings of fact, as in this case, a reviewing court should presume the trial court resolved all factual disputes in favor of its judgment. *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 343.

A plaintiff bears the initial burden of pleading allegations sufficient to bring a non-resident defendant within the terms of the Texas long-arm statute. *Coleman*, 83 S.W.3d at 807; *Meader*, 178 S.W.3d at 343. The nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations. *Coleman*, 83 S.W.3d at 807; *Meader*, 178 S.W.3d at 343.

Personal jurisdiction over nonresident defendants satisfies the constitutional requirements of due process when the defendant has purposefully established minimum contacts with the forum state, and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Marchand*, 83 S.W.3d at 795; *Meader*, 178 S.W.3d at 343. A defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 344.

## II. Torts Directed at Texas

Falcon Crest argues that "[a]ppellees committed torts and other wrongful acts against a corporation located in . . . Texas" and that "is sufficient to establish jurisdiction over [a]ppellees in a Texas court." However, jurisdiction is not based on where a

defendant "directed a tort." *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 789-90 (Tex. 2005) ("This Court too has expressly rejected jurisdiction 'based solely upon the effects or consequences of an alleged [tort]' in the forum state. Instead, it is 'the defendant's conduct and connection with the forum' that are critical.") (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (holding jurisdiction may not be based on effects or consequences in forum state of alleged conspiracy)); *accord Peredo v. M. Holland Co.*, 310 S.W.3d 468, 475 (Tex. App.— Houston [14th Dist.] 2010, no pet.) ("[T]he 'directed tort' rationale . . . was rejected by the Texas Supreme Court in [*Holten*].") In other words, merely directing a tort at a company located in Texas is not a contact with Texas for jurisdictional purposes. *Holten*, 168 S.W.3d at 790. We thus do not consider it in our jurisdictional analysis.[3] *See id.*

### III. Specific Jurisdiction

When specific jurisdiction is asserted, our minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991); *Meader*, 178 S.W.3d at 344. Specific jurisdiction over a nonresident defendant is established if the defendant has purposely availed itself of the privilege of conducting activities with the forum state, and plaintiff's cause of action arises out of or relates to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Moki*

---

[3] Falcon Crest argues that *Holten* does not apply because in that case, "the [p]laintiff-[b]uyer . . . unilaterally sought the services of the non-resident [d]efendant-[s]eller." In *Holten*, a Texas resident called a Michigan seller to purchase a recreational vehicle. *Holten*, 168 S.W.3d at 784. At issue was whether suit could be brought in Texas based on a nonresident's alleged misrepresentation during that telephone call. *Id.* The supreme court held the Texas court did not have specific jurisdiction over the case because the defendant's only contacts with Texas were based on the phone call initiated by the Texas plaintiff and the delivery of the recreational vehicle to Texas at the plaintiff's request and sole expense. *Id.* at 788-89. Here, appellees initiated the purchase from Falcon Crest, but the purchase was negotiated in Colorado, and, as in *Holten*, appellees' only contacts with Texas were at the behest of Falcon Crest. *See U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.). *But see P.V.F., Inc. v. Pro Metals, Inc.*, 60 S.W.3d 320, (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (holding nonresident subjected itself to specific jurisdiction in Texas by issuing 30 purchase orders to Texas plaintiff, seeking and obtaining to purchase goods from Texas plaintiff on credit, and offering Texas plaintiff's goods for resale to others).

*Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007); *Coleman*, 83 S.W.3d at 806. The defendant's activities, either direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 345.

## A. Purposeful Availment

To assess whether a nonresident defendant has purposely availed itself of the privilege of conducting activities in Texas, we analyze three elements. *See Holten*, 168 S.W.3d at 785; *see also Drugg*, 221 S.W.3d at 576. First, only the defendant's own actions may constitute purposeful availment; a defendant may not be haled into a jurisdiction based solely on the unilateral activities of a third party. *Holten*, 168 S.W.3d at 785 (citing *Burger King*, 471 U.S. at 475). Second, a showing of random, isolated, or fortuitous contacts is insufficient. *Id*. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Third, a defendant must seek some benefit, advantage, or profit through his purposeful availment, because jurisdiction is based on notions of implied consent; that is, by seeking the benefits and protections of a forum's laws, a nonresident consents to suit there. *Id*. (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The purposeful availment test focuses on "the defendant's efforts to avail itself of the forum" and not "the form of the action chosen by the plaintiff." *Drugg*, 221 S.W.3d at 576.

We first turn to the elements enumerated in *Holten* to analyze whether appellees' purchasing parts from Falcon Crest, receiving parts shipped from Texas, and sending payments to Texas, as required by Falcon Crest, were purposeful contacts with Texas. *See Holten*, 168 S.W.3d at 785.

***Unilateral Activities of Falcon Crest Not Considered***. We must disregard any unilateral activities of Falcon Crest for purposes of our minimum contacts analysis. *See id*. Falcon Crest argues that appellees' contact with Falcon Crest, as a Texas corporation that supplied parts to appellees from Texas, was sufficient to confer jurisdiction on the Texas court. Appellees, however, contacted and negotiated with employees of Falcon

6

Crest from its Colorado office and never communicated with any employees from Falcon Crest's Texas office. That Falcon Crest supplied parts to appellees from Texas was thus a unilateral activity of Falcon Crest that does not weigh in favor of finding the trial court had jurisdiction over appellees. *See id.; see also Peredo*, 310 S.W.3d at 474-75 ("[W]e have previously stated that a nonresident does not establish minimum contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas concerning the contract.").

In support of its assertion that the trial court had jurisdiction, Falcon Crest also argues "[p]ayment by [a]ppellees was required to be remitted to Houston, Texas." However, the place of payment was dictated by Falcon Crest's unilateral choice, and thus it does not support a finding that the trial court had jurisdiction. *See Riverside Exps., Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 653 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

***Random, Isolated, and Fortuitous Contacts Not Considered***. We also examine whether appellees' contacts with Texas were purposeful, as opposed to "random, isolated, or fortuitous." *See Holten*, 168 S.W.3d at 785. As set forth above, appellees contacted Falcon Crest's Colorado office to order the parts. There is no evidence that, at that time, appellees knew Falcon Crest was a Texas corporation or that the parts would be sent to Colorado from Texas. We find appellees' purchase of parts shipped from Falcon Crest's Houston office not only to be based on Falcon Crest's unilateral activity but also to be a fortuitous contact with Texas.

We likewise reject the notion that appellees' remittance of invoice payments to Falcon Crest's Texas office weighs in favor of finding jurisdiction over appellees. As we previously have stated regarding minimum contacts, "sending funds to Texas is not determinative." *Riverside Exports, Inc.*, 362 S.W.3d at 654. Moreover, the invoice payments sent to Texas were fortuitous contacts with the state. *See, e.g., U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977) (stating, with regard to defendant's only contact with Texas which involved the execution of a contract requiring payments to

7

be made in Texas, "Indeed it can be said that [defendant] has engaged in no 'activity' in Texas, his only 'activity' being the preparation and mailing of checks from his place of business in Oklahoma"); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting jurisdiction is not "justified by the single fact that a contract is payable in Texas"). We thus find these contacts to be random and fortuitous.

*No Benefits and Protections of Texas Law Sought*. We likewise find no evidence that, in ordering parts from Falcon Crest's Colorado office and dealing exclusively with employees from that office, appellees sought the benefits and protections of Texas law. *See Holten*, 168 S.W.3d at 785. Appellees are all Colorado residents. Neither W.C.S. One nor Jet Management are or have any affiliates licensed to do business in Texas. Appellees did not specifically seek to do business with a Texas corporation: they contacted Jet Management's vendor in Colorado. The fact that the vendor happened to be a Texas corporation is not evidence that appellees sought the benefits and protections of Texas law. *See Burt*, 553 S.W.2d at 763.

We conclude that appellees did not purposefully avail themselves of the privilege of conducting activities in Texas.

## B. And "Arises From or Is Related To"

The "arises from or is related to" requirement of specific personal jurisdiction requires a "substantial connection" between the nonresident defendant's contacts and the "operative facts of the litigation." *Drugg*, 221 S.W.3d at 584–85. That is, the nonresident's conduct must have been purposely directed at or have occurred in the forum and must have a "substantial connection," resulting in the alleged injuries, with the litigation's operative facts. *Id*. We do not reach the issue regarding whether Falcon Crests' causes of action arose out of or related to appellees' contacts with Texas because we have held that appellees' contacts with Texas were not purposeful.

We hold that appellees' contacts with Texas were not sufficient to confer specific

jurisdiction on the trial court.

## IV. General Jurisdiction

Unlike specific jurisdiction, general jurisdiction allows a forum to exercise jurisdiction over a nonresident defendant even if the cause of action did not arise from or relate to the defendant's contacts with the forum. *Coleman*, 83 S.W.3d at 806–07; *Meader*, 178 S.W.3d at 349. An exercise of general jurisdiction is constitutionally permissible when the defendant's business contacts with the forum are "continuous and systematic," which is a more demanding minimum-contacts analysis than that of specific jurisdiction. *See Coleman*, 83 S.W.3d at 807; *Meader*, 178 S.W.3d at 349. We hold that the contacts of appellees enumerated by Falcon Crest—engaging Falcon Crest, receiving parts from Texas, sending payments to Texas as required by Falcon Crest, and directing torts at Texas—are not continuous and systematic contacts as required for general jurisdiction.[4] *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding purchasing helicopters from Texas, negotiating contracts with Texas resident, and training pilots in Texas were insufficient contacts to create general jurisdiction); *see also PHC-Minden v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 170-71 (Tex. 2007) (holding employee trips to seminars in Texas, purchases from Texas vendors, and three contracts with Texas entities were insufficient contacts to create general jurisdiction).

---

[4] Appellees also had a few sporadic contacts with Texas that were unrelated to the purchases from Falcon Crest. Falcon Crest does not argue these contacts conferred general jurisdiction on the Texas court, but appellees included them in their response brief. They are as follows: Taraghi made two personal trips to Texas. W.C.S. One purchased the Falcon 200 through a Texas broker who represented an Ohio seller. Hanzel (1) discussed purchasing the Falcon 200 with the Texas broker; (2) hired a Texas citizen to conduct training on the Falcon 200 in Tyler, Texas; (3) flew to Sugar Land, Texas once; (4) purchased fuel in Texas once; and (5) has a USAA account administered in Texas. These contacts likewise are not systematic and continuous and do not give rise to general jurisdiction in this State. *See Hall*, 466 U.S. at 416; *see also PHC-Minden*, 235 S.W.3d at 170-71.

9

We overrule Falcon Crest's two issues. We affirm the order of the trial court granting appellees' special appearance and dismissing the case for lack of personal jurisdiction.


/s/ Martha Hill Jamison
   Justice

Panel consists of Justices Boyce, Christopher, and Jamison.